UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GREGORY CALDWELL                        CIVIL ACTION NO. 14-cv-2241

VERSUS                                  JUDGE FOOTE

TIM KEITH                               MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Gregory Caldwell compiled a criminal history that included more than 50 arrests, 12 felony convictions, 39 misdemeanor convictions, and five parole revocations. Tr. 120-26, 132-33, 223. His conviction in this case stemmed from a visit to the Dillard's department store in Shreveport, where an employee who was monitoring the surveillance system saw Petitioner remove a Dillard's shopping bag from his pocket, place merchandise in it, and leave the store without paying. She alerted the manager, who approached Petitioner outside the store and found him in possession of ten Polo shirts with a value of $820.

A Caddo Parish jury heard testimony from the store employee and watched the video of the events. The jury found Petitioner guilty of theft of goods with a value of $500 or more. Petitioner was adjudicated a fourth-felony offender. Judge Scott Crichton spared Petitioner what could have been a life sentence and imposed a 30-year term on the 50 year old defendant. Tr. 136-37.

Petitioner's counsel did not file an immediate appeal. Petitioner later filed a post-conviction application and argued that counsel was ineffective for not preserving his right to appeal. This was followed by counsel moving for an out-of-time appeal, which was granted. The sentence was then affirmed on appeal. State v. Caldwell, 74 So.3d 248 (La. App. 2d Cir. 2011), writ denied, 86 So.3d 625 (La. 2012). The trial court denied the post-conviction application, since the out-of-time appeal had remedied any ineffective assistance in that regard. Petitioner later filed two more post-conviction applications that presented other issues. He now seeks federal habeas corpus relief based on some of them. For the reasons that follow, it is recommended that his petition be denied.

**Plea Advice**

    **A. Introduction**

The State offered to allow Petitioner to plead guilty, receive a 10-year sentence, and avoid a multiple offender enhancement. Petitioner rejected the offer. Petitioner now argues that defense counsel rendered ineffective assistance for (1) not informing the prosecutor that he would accept the plea offer "if the video tape shows I committed the thefts as the State alleged as I instructed her to do resulting in its withdrawal" and (2) not informing the court that Petitioner was not rejecting the plea offer.

    **B. Relevant Facts**

A transcript attached to Petitioner's petition indicates that, at the conclusion of the preliminary hearing in May 2010, the prosecutor stated: "Your Honor, the State is going to

tender an offer to Mr. Caldwell to plead guilty as charged to one count of felony theft of goods, receive 10 years at hard labor." The case was back in court in August 2010, and the prosecutor confirmed that "the State did tender an offer to Mr. Caldwell to plead guilty as charged, one count of felony theft of goods and receive 10 years at hard labor." Defense counsel Kyla Bobier asked for "just one moment with the ADA," which was followed by an off-the-record discussion. When the attorneys went back on record, this exchange occurred:

> PROSECUTOR: Your Honor, I believe that Mr. Caldwell is not going to accept the State's offer based on the fact that he hasn't reviewed the video. Your Honor, I show that the video was picked up on May 28th.
>
> THE COURT: Alright. Sir, do you wish to accept or reject the offer?
>
> MR. GREGORY GLENN CALDWELL: Reject.
>
> THE COURT: Alright. Your trial is set for September 13.
>
> MR. GREGORY GLENN CALDWELL: Thank you.

Tr. 26.002. The case went to trial as scheduled, and Petitioner was convicted.

The State filed a multiple offender bill that sought to enhance the sentence for the instant conviction, and it presented evidence at a hearing that Petitioner was a fourth-felony offender. During a discussion about the appropriate sentence, this exchange occurred between Petitioner and Judge Crichton:

> THE COURT: Mr. Caldwell, ... If you want to say something about it that's fine but you might want to talk to your lawyer first.
>
> DEFENDANT: I want to say something, Your Honor. I just want to say it was my intention when I came to court on August the 20th to accept the plea bargain. The only thing that I did was when they called me to the stand with

my attorney, well, I thought I had a right to see the evidence that the State had against me which was the video.

When she asked me was I going to take the ten years I asked her -- I just only said I want to see the video, Ms. Bobier, I want to see the video. And I didn't refuse the offer, the DA ended the plea, he made the statement to the Judge, Your Honor, at this time I don't think Mr. Caldwell want to take the ten years that the State offered so we're going to schedule it for trial

I really felt like it was my lawyer's responsibility or my responsibility to tell the Judge that we didn't want to take the ten years and I was forced at trial. So when I came back on September she brought the video on September 11 for me to see the video. Well, I went to trial September the 13, it was too late. That is the reason why I'm in these restraints right now because I actually begged before the jury was picked or anything. I begged for the ten year plea bargain at the time.

I got down on my knees and actually begged and I guess they feel like I was a theft (threat) to the Court. I'm not on an aggravated charge, I got this belt on me after I begged and pleaded to take the ten years. Before I even went to trial, I knew, you know what I'm saying, but I didn't see the evidence that was against me until two days over the weekend before I came to trial. I wanted to take those ten years, honestly I did, I wanted to take those ten years but I couldn't. There was no other way, nothing else that I could do.

THE COURT: Well, let me make a few statements that are in response to the points that you made, Mr. Caldwell.

DEFENDANT: Yes, sir.

THE COURT: First of all, you've been accepting plea bargains given out by prosecutors for thirty years, thirty years. By my count according to my review of your rap sheet which I ordered from the State of Louisiana Department of Public Safety and Corrections you have what I count to be seventy-nine arrests.

Now, that could be plus or minus five, I'll give myself a margin of error for perhaps miscounting, but what I counted was seventy-nine arrests since 1979 so for thirty-one years you've been getting arrested, making plea bargains with the prosecutor over at (Shreveport) City Court ... Monroe, ... Bossier, ... Alexandria ... and I'm not sure where else and according to this criminal

history report it appears that you've been successful in plea bargaining your way through three decades, three decades, seventy-nine arrests. And what I count according to this is about ten felony convictions, not five like the Assistant DA says but ten.

Now, again, I need to double check that and be a little more precise but roughly ten felony convictions and roughly, oh, I don't know, thirty misdemeanor convictions just giving you the benefit of the doubt kind of rounding off the numbers. The DA has no obligation to offer you anything. Just because you've been plea bargaining your way through life for the last three decades doesn't mean that Mr. Smith here has any obligation on the day of jury trial to offer you anything. He called the case for trial. It was correct that you wept in the courtroom loudly before that jury venire came in but that's a little bit late to be crying about it because all of this has been going on for thirty-one years.

Perhaps it might have been a wiser move at jail clearance to say, Judge, I will plead guilty now if you'll accept my guilty plea, that's what I would have said if I were you but, anyway, I'm not you. Or at the very least I would have pled guilty at preliminary examination or after arraignment and said, Judge, I'll take whatever you give me, I just don't want that multiple offender bill but you didn't say that. And I understand you wanted to see the evidence against you, the evidence is filed in the public record. I am convinced that Ms. Bobier did an excellent job representing you. I don't accept what is at least an implicit complaint about Ms. Bobier.

DEFENDANT: No, the complaint is not against her.

THE COURT: Okay, if you're not complaining about her what are you complaining about?

DEFENDANT: No, I was just -- that I -- I'm just trying to let you know that I really -- I'm remorseful for the fact that I didn't -- I really didn't intend for this to go this far.

THE COURT: You didn't intend to be convicted by a jury –

DEFENDANT: That's right, I tried to take the plea bargain before it even got this far.

Tr. 111-14.

A letter from the Louisiana State Bar Association to Petitioner is dated August 27, 2010 and indicates that Petitioner filed a letter of complaint against defense counsel. The LSBA explained that it had no jurisdiction over the discipline of attorneys, but it had forwarded a letter to the Louisiana Attorney Disciplinary Board. Tr. 246. Defense counsel responded with a letter dated October 13, 2010 that included this statement:

> Gregory G. Caldwell was given an offer to plead guilty to felony theft and received ten years (10) hard labor with no multiple offender bill being filed. August 20, 2010 was the deadline of the state's offer. On that date Mr. Caldwell declined the state's offer.

Doc. 1-1, p. 67; Tr. 245.

### C. State Court Decision

Petitioner argues in his habeas petition that defense counsel rendered ineffective assistance for (1) not informing the prosecutor that he would accept the plea offer "if the video tape shows I committed the thefts as the State alleged as I instructed her to do resulting in its withdrawal" and (2) not informing the court that Petitioner was not rejecting the plea bargain, as the prosecutor told the court at the July 21, 2010 appearance. Plaintiff presented same or similar claims to the state courts in his second and third post-conviction applications. The trial court rejected the claims because Petitioner "has not met his burden under Strickland" and "merely makes unsupported allegations of ineffective assistance of counsel." Tr. 354-55, 381. The state appellate court summarily denied writ applications "on the

showing made." Tr. 439, 481. The Supreme Court of Louisiana denied writs without comment. Tr. 514.

### D. Habeas Analysis

A defendant is entitled to effective assistance of counsel during the plea bargaining process. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012). To prevail on a claim of ineffective assistance during the plea bargaining process, the petitioner must generally satisfy the two-part performance and prejudice test of Strickland v. Washington, 104 S.Ct. 2052 (1984).

Counsel may render deficient performance if she performs below an objective standard of reasonableness. That could include advising a client to reject a plea offer that should have been accepted, but a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 106 S.Ct. at 2065. To show prejudice in the context of plea advice, a petitioner "must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012). He must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been accepted by the petitioner and approved by the court. Id. at 1385.

This claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard (as applied in Lafler) was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

The state court did not hold an evidentiary hearing but "a full and fair hearing in state court is not a prerequisite to applying the AEDPA's deferential scheme." Wiley v. Epps, 625 F.3d 199, 207 (5th Cir. 2010). This court must assess the state court's rejection of the claim to determine whether it was an objectively unreasonable application of Strickland/Lafler, and this court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398

(2011). It is reversible error for a federal district court to hold a federal hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011).

Petitioner himself, not his attorney, flatly told the judge that he rejected the plea offer. The prosecutor mentioned that Petitioner wished to first see the video, but Petitioner did not voice any desire to accept the plea conditioned on viewing the video or offer any other condition or explanation for his rejection. Instead, he flatly told the judge that the plea offer was rejected. There is no record evidence of what advice counsel gave Petitioner about the plea offer during the off the record discussion or any other time.

Petitioner plainly came to regret his decision. Perhaps there was a mistaken belief by Petitioner that the plea offer would be open forever, but there is no evidence that counsel was responsible for such a belief. It is equally likely that Petitioner decided to take a chance the State would make a better offer rather than go to trial. The record simply does not explain what Petitioner was thinking at the time.

The state court had these facts before it and came to the conclusion that Petitioner had not met his Strickland burden. The state court's decision was not explained, but "Section 2254(d) applies even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). A petitioner who challenges a state court's summary denial may meet his burden under the first prong of Section 2254(d) only by showing that there was "no reasonable basis" for the state court's decision. The federal habeas court must determine what arguments or theories could have supported the summary decision, and then it must ask

whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. Pinholster, 131 S.Ct. at 1402, citing Harrington v. Richter, 131 S.Ct. 770, 786 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004).

Reasonable persons could perhaps review the record and argue that counsel should have somehow intervened and asked that the offer be kept open pending a viewing of the video or, if that was not possible, specifically advising Petitioner of that fact on the record. But there is the possibility that there were off-the-record discussions about these issues, as discussions among the prosecutor, defense attorney, and defendant about plea negotiations are usually not on the record. This case is a bit unusual in that there actually is some record evidence of the plea discussion.

A reasonable state court jurist could also review the same evidence and reasonably conclude that Petitioner had not met his burden of showing incompetent advice and prejudice, particularly considering Petitioner's own direct and unconditional rejection of the plea offer. Thus, not all fairminded jurists would find on this record that Petitioner has made out a case of ineffective assistance of counsel. Under these circumstances, habeas relief is not available under the demanding Section 2254(d) standard.

**Prosecutor and Plea Bargain**

Petitioner's next claim is that the prosecutor violated Petitioner's right to fundamental fairness by withdrawing the plea offer in bad faith upon Petitioner's request to see the video tape, as the State had not previously noted an expiration date for the offer. Petitioner notes that his defense counsel wrote in response to the bar complaint that the offer expired on August 20, 2010, the date Petitioner declined it, but Petitioner claims that was false and the State had not imposed a deadline.

Plea bargaining is an essential element of the criminal process, and if a plea is entered based on a promise by the prosecution, such a promise must be fulfilled. Santobello v. New York, 92 S.Ct. 495, 499 (1971). "But there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." Weatherford v. Bursey, 97 S.Ct. 837, 846 (1977). There is also "no general constitutional right to discovery in a criminal case." Id. at 846.

Petitioner has not demonstrated that there was any plea bargain in place that the State could have violated under Santobello. The record does not contain express evidence regarding any expiration date on the State's offer. No particular date was mentioned on the record, but it was also never said that the offer would remain open through the beginning of trial (which is when Petitioner finally begged to accept it). There was a fair implication at the August 20, 2010 hearing that Petitioner could either accept the plea offer then or see his case set for trial. Petitioner squarely rejected the offer, and the court set a trial date.

Petitioner may have unfortunately misunderstood the generosity of the State's offer and made a terrible mistake in not accepting a reasonable plea offer, but his failings do not amount to a violation of any constitutional rights by the prosecutor. The only acts of the prosecutor were to extend a generous offer, which Petitioner declined, and then take the case to trial. The prosecutor cannot be faulted for allegedly withdrawing the offer based on Petitioner's demand to review the video tape because (1) the prosecutor stated that he had provided the video to the defense several weeks earlier and (2) the State never withdrew the offer; Petitioner rejected it. There is no basis for habeas relief from the conviction based on these arguments.

**Defense Counsel Conflict of Interest**

   **A. Introduction**

If a defendant has a constitutional right to counsel, he has a corresponding right to representation that is free from a conflict of interest. Wood v. Georgia, 101 S.Ct. 1097, 1103 (1981). The familiar Strickland standard is used to address ineffective assistance claims based on conflicts outside of the multiple or serial client context. Beets v. Scott, 65 F.3d 1258, 1265 (5th Cir. 1995)(en banc). To prevail, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland, 104 S.Ct. at 2064.

Petitioner argues that defense counsel operated under a conflict of interest because she was aware of the complaint Petitioner had filed against her with the bar association prior to the trial and the multiple offender adjudication hearing. Petitioner argues that counsel, because of her conflict, failed to investigate or develop an intoxication or insanity defense and failed to challenge the multiple offender proceeding on the grounds that the prior convictions did not comply with Boykin, were beyond the 10-year cleansing period, and the like.

**B. Trial Performance**

This habeas claim must be assessed evidence based on the contents of the state court record, but Petitioner has not pointed to any evidence that indicates defense counsel knew about the bar complaint prior to trial. Petitioner's only complaint about counsel's trial performance is that she, because of the alleged conflict, failed to develop intoxication or insanity defenses despite him telling her of his intoxicated state and addiction to drugs and alcohol.

With respect to insanity, a defendant in Louisiana is presumed to be sane and has the burden, if he raises the defense, to rebut the presumption of sanity by a preponderance of the evidence that shows a mental disease or defect that prevented him from distinguishing between right and wrong. La. R.S. 14:14; State v. Bonilla, 186 So.3d 1242, 1255 (La. App. 5th Cir. 2016). There is zero record evidence that Petitioner informed his counsel that he might be insane or that there was otherwise a plausible basis for an insanity defense.

Voluntary intoxication is a defense only to the element of specific criminal intent or special knowledge that might be required in a particular crime. La. R.S. 14:15(2). An official element of theft is a specific intent to permanently deprive a victim of his property. State v. Shell, 87 So.3d 934 n. 11 (La. App. 2d Cir. 2012). When police confronted Petitioner at his home days after the crime, he stated that he knew what the charges were about. He said he had begun using drugs again, but there was no indication that he was so intoxicated at the time of the offense that he could not form the intent to permanently deprive Dillard's of its property. Tr. 25. The record shows that Petitioner was an experienced thief who, when confronted by the store manager, displayed his guilty knowledge by dropping the merchandise and fleeing to a waiting vehicle and escaping. Store employees recognized Petitioner from previous incidents at the same store, from which he had been banned two years earlier. Tr. 23. . Given the lack of evidence to support the proper defenses, the state court did not act unreasonably in rejecting the Strickland claim that counsel failed to develop these defenses.

### C. Multiple Offender Hearing Performance

Correspondence indicates that counsel was aware of the bar complaint prior to the multiple offender hearing. Petitioner complains that counsel's knowledge of the complaint caused a conflict that prevented her from raising several challenges to the use of his prior convictions.

When the State relies on a prior conviction that is based on a guilty plea in proving a defendant's multiple offender status, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken. State v. Shelton, 621 So.2d 769 (La. 1993). If the State meets that burden, the defendant then has the burden to produce affirmative evidence of an infringement of his rights or a procedural irregularity in the taking of the plea. If he meets that burden, the burden of proving the constitutionality of the plea shifts to the State, which can meet that burden with a "perfect transcript" of the guilty plea that reflects a proper Boykin colloquy. If the State introduces anything less, such as a guilty plea form or minute entry indicating Boykinization was conducted, the judge has to weigh the evidence to determine whether the State met its burden of proving the prior guilty plea was informed and voluntary and in compliance with Boykin.

The State presented evidence of a conviction in 1999 for middle grade theft, a conviction in 2000 for theft of goods, and a conviction in 2003 for carjacking. The State introduced criminal minutes from each case, and each reflected that Petitioner appeared with counsel and entered a guilty plea after being advised of his constitutional rights "as per Boykin v. Alabama." Tr. 104-09. Petitioner has had a number of years to review his prior pleas, but he has yet to point to any specific shortcomings that counsel might have used to *successfully* challenge the prior convictions under Shelton or other law.

Petitioner makes conclusory assertions that the pleas were not entered in accordance with Boykin, that Petitioner was not advised of his appellate rights (not required by Boykin), and that the 10-year cleansing period prevented use of all of the felonies, but he has not articulated specific facts to back any of those conclusory assertions. Given those failures, the state court did not act unreasonably when it denied a Strickland claim based on counsel's alleged failure to make such challenges. Habeas relief is not available on this final claim.

Accordingly,

IT IS RECOMMENDED that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of March, 2017.

_____
Mark L. Hornsby
U.S. Magistrate Judge